Morning. His agenda number four. Case number one oh six three six one. In race Samantha V. A minor. People in the state of Illinois versus Samantha V. Council may approach the bench when ready to go. Good morning, your honors. May it please the court. My name is Joshua Tepfer from the Northwestern University Bloom Legal Clinic. And I represent Samantha V., minor respondent in this case. The key issue in this case is whether the one act, one crime doctrine established over 30 years ago by this court in People v. King applies to juvenile cases such as Samantha's. This issue has been resolved by this court three and a half months ago in People v. Artis. And I quote, referring to the case of N. Ray W. C., this court has applied the King Doctrine in a juvenile case. The King Doctrine is the one act, one crime doctrine. It's this court's words three and a half months ago and nothing has changed. There's no compelling reason to overrule that decision. Every single reason for the doctrine in the criminal context applies equally to juveniles, if not more so, in the context of delinquency. The doctrine, one act, one crime doctrine, prohibits multiple convictions regardless of whether there's consecutive or concurrent sentences when those convictions are based on a single physical act. The concern of the doctrine is future prejudice. Originally, in People v. King, the concern dealt with parole. The concern being that the parole board would consider an unauthorized conviction or that there were multiple acts when there was really only a single act. And there was a concern that the parole board would use this misinformation and it would affect the defendant or whomever's parole opportunities. This court in Artis and other decisions have recognized that there's other reasons as well outside of parole. Namely, an unfortunate future interaction with the criminal or juvenile justice system again. This concern is so great that in Artis, it again expressed clearly that forfeiture is excused for the one act, one crime doctrine under the second prong of the plain error test. The error affects, one act, one crime doctrine error, affects the integrity of the judicial process. That's what this court said in People v. Harvey and reiterated again in Artis three and a half months ago. The interests of justice require correction to avoid the possibility of future confusion or future adverse effect to the respondent. That's again, Artis quoting In Re WC. The concern is the future adverse effect or future confusion that may happen in the effect of an unauthorized conviction or an unauthorized delinquency finding adjudication. And minors can suffer this future prejudice as a result of an unauthorized finding of guilt on their record in exactly the same manner, if not more so. Of course, the underlying offense of a delinquency is considered in many respects in future court hearings, whether it be a future bond hearing in criminal court, whether it be a future juvenile pretrial detention hearing in juvenile court, whether it be a transfer hearing, an extended juvenile jurisdiction hearing, or of course, a sentencing hearing in juvenile or adult court. The underlying offense or offenses are clearly relevant and should be considered by this court. By, I'm sorry, any future court in the consideration. This court would want, of course, these hearings would want to know whether the underlying delinquency finding was based on one offense, multiple offenses, whether it was based on a murder or whether it was based on a misdemeanor or a petty offense. These are relevant considerations. Clearly, there's other context, even outside a future interaction by the particular defendant or respondent with the court system. If the minor were to be a witness in a future case, it could be impeached by past adjudications, the underlying offense, which of course is relevant, the underlying offense or offenses. Why should these courts have misinformation at their fingertips that there were multiple acts in an unauthorized finding when there were not? There's no interest that the state has identified and there's no interest in these courts having incorrect information. This doctrine is about accuracy and that's all we're asking, that this be portrayed accuracy. Even outside court proceedings and court personnel, there's other people who would have access to these doctrines. While juvenile delinquency adjudications are confidential mostly, not to all sources. If a minor in the future wanted to join the military, for example, there's a specific exception that military personnel can see these delinquency findings and the underlying offense, of course, would be relevant to military personnel. They would want to know whether it was a murder or if it was a petty offense that was delinquency and they would equally want to know whether there were multiple acts, multiple offenses for the delinquency finding or if there was a single finding. And finally, lest we forget that the original rationale for the King Doctrine from Schlanger and the cases before that was the parole board, the concern for the parole. Parole has been eliminated, as we know, in the criminal justice system, but it has not been eliminated in the juvenile justice system. So the exact same rationale, the original rationale for the doctrine exists in juvenile delinquency still, while it does not in the adult context. Nevertheless, regardless, this court in our case said there is other reasons beyond the parole board, but I would just add that there is more. Counsel, if I may. Assume for a moment, and I mean only assume, that we agreed with you. How would we structure that ruling? I know that in your briefs you use, sometimes you use a merging concept. And other times I think you ask us to vacate something. I'm not exactly certain what it is that we'd vacate. Assuming that we had to pick between the two aggravated batteries here, who would do that? Who would do that? Who would do that? Who would do the decision as to whether the one that would be merged into would be one or the other? I was a little imprecise in that, and I apologize for that. I think the trial court is in the best position to make that ruling. We take no position as to which of the offenses should be vacated. The state is the party that's responsible for deciding what to charge. Would they have the option to decide which of the two, in this instance, if we agreed with you again, which of the two underlying charges would stand as the record? I think that issue was litigated in Artis, in the second part of Artis, and this court decided that it should remand and have a hearing or the trial court to decide that decision if it wasn't in the discretion of the state. But honestly, we don't take a position on that. In this case, we would be satisfied with the vacation of either. I don't want to speak for the state. I would imagine they would prefer to vacate the public way, the second of the count or the merge of the second count into the first, and we do not object to that. It does bring up a secondary point in that one of the state's positions is that the dispositional order doesn't refer to any of the offenses. The fact is, is that there is nothing called a dispositional order in this record, and that needs to be clarified. There's something called a sentencing order, and there's something called a probation order, or probation, parenthetical, supervision, and supervision is caught out. Now, in the criminal context, there's a minimus, and that would be the final record and what people, what future court personnel would correct. And I would urge this court to instruct trial courts to have a final document which says what the sentence and what the underlying offense for the delinquency is in juvenile court. I'm an appellate practitioner, and I haven't practiced in juvenile court, but I've had my share of juvenile cases, and they all look different. I've seen dispositional orders, I've seen probational orders, and now I've seen something called a trial order, which is in this case, too, and I think it should be clarified. But ultimately, what we would ask is that this record be clarified and that there be a remand. Now, practically speaking, the appellate court has already ordered a remand for the sentencing in this case to clarify the probation order in this case. And that concerns the right to be in the park, doesn't it? Yeah, that concerns the lawyer provision, and the state has not cross-appealed on that issue, so I would imagine there would be a remand order in this case, and this court would order that. So in the practical effect of this case, it's already going to be remand. I think it would be most appropriate to remand in this case. Counsel, help me out here on the facts. The trial court found the minor guilty of both charges and entered a remand. They entered a single adjudication of delinquency. Is that correct? That's the state's position, that there's always simply a single finding of delinquency. That's correct. Well, what does this record show? This record shows that the trial court found her guilty of both offenses, the first offense being the two charges, being that she inflicted great bodily harm on Rosalita Rodriguez, the victim, in this case. The second is that she committed a battery that was heard on a public way, which made it aggravated. No, I just want you to go on. I mean, I understand it would be similar in an adult criminal case to a jury or judge finding an individual guilty of one or more counts that might be a merger. Exactly. Help me from here on. What exactly does the adjudicatory order show and what does the dispositional order show with regard to the basis of those actions? Well, there's something called a trial. In People v. XRL Divine-Rostralco, I think this court made clear that there's three steps to the adjudicatory process. There's the trial, the guilt finding, which is what I would imagine this document called the trial order refers to. And that trial order says, guilty as to count all counts one and two. Okay? So that's the first step. Then there is the wardship finding during the sentencing hearing, which she's made clear that she's guilty of all counts one and two. The court found that Samantha should be a ward of the court. And then there's the disposition, which she was sentenced to five years probation. So there is two documents that refer to what I would say is the disposition order. There's something called the probation parenthetical supervision order, and supervision is crossed out. That makes no reference to any underlying offenses. It makes no reference to a single finding of delinquency. It says nothing about delinquency. It says what the sentence is. The second document is something called a sentencing order, which again says that the minor having been found guilty and all statutory prerequisites having fully complied, the minor is a judge of the ward of the court. So I think that would be the second, the XRL Divine-Rostralco second stage. But then it also later says that she is sentenced to five years probation. There's no mention of the underlying offense. There's no mention of a single finding of delinquency. So the record is entirely unclear. And what I would say with that is that goes, if there is this potential future prejudice, what is a court going to do, practically speaking? They're going to look at these documents. And these documents won't say what the underlying offense are. So they would be more likely to look at, for example, the trial order, or more likely to look at the social investigation report, which refers to both offenses. They would be more likely to look at the report of proceedings to clarify what exactly these delinquency findings were based on. So those all provide misinformation in that she, that the evidence, as proportioned by the state, there's only a single, that there's only one physical act here. And so there needs to be clarification so future courts are not prejudiced. Does the record reveal whether there's any police records that flow from these documents? Police records that flow from these documents? There is, like, an arrest report or something along those lines? I was thinking, I would have called it the B of I in my day. The B of I? I don't know. The identification record. But it shows the criminal history of the arrestee. Oh, there's, that wasn't in the record. She had no prior criminal history before this. My point is, would this be, would it be clear from the record or elsewhere whether or not these two findings of guilty could end up in a police record somewhere? I don't think that is clear in the record at all, no. So, I mean, I imagine there's, of course, a police file on this case. But there wasn't, I can't speak for certain, but if there was anything there was an arrest report in this case, it would be in this record, but other than that, there would be nothing else that I recall. The last issue, though, gets to what, some of this, what they're saying is, is there a one act, one crime issue here? And that is disputed by the state. And People v. Crespo informs this decision. Now, an act is defined as an overt manifestation, but you need to be more, there can be instances where the evidence could potentially support multiple acts, but the state has to apportion the charges and proceed a trial in that manner, that there were multiple acts. And they did not, they chose not to do so here. Regarding the charges, first of all, the first point is, two appellate courts, I'm sorry. I think it's the state's position. I don't want to speak for them, and they can certainly correct me. But don't, isn't it argued that there is more than enough factual basis for there to be findings of guilty on both charges? And I know your position is they didn't make that distinguishing step in the pleadings, but there are multiple blows struck, and one blow on each count would be enough to support that finding. The evidence could... They suggest that when they charge aggravated battery causing great bodily harm and aggravated battery on a public way, that that alone is enough distinction to support both. And why isn't it? Because there's only one act. Being on a public way is not an act.  The act is a battery. And Crespo teaches... For example, in Crespo there were three stab wounds. The state could have apportioned each of the stab wounds to prove each individual. They did not. And this court said they had to because it is profoundly unfair. And to do so for the first time on appeal. And it gets into constitutional problems of notice and right to prepare a defense for these kind of issues. And there is no question that juvenile delinquency has the same constitutional protections in In Re Gall. So the intent of the state's charging documents is key. And the intent is they cited separate statutory sections. They cited section A in the first charge of the aggravated battery statute, which requires great bodily harm. And they cited section B8 in the second charge, which only distinguishes on public way. Both charges allege multiple times striking. And their arguments at trial say the same thing. They use the singular attack in their opening argument. They say it occurred on a public way is what supports count two. That's all they distinguish count two is that it, the battery, multiple strikes, multiple times occurred on a public way. Closing argument, they make the same distinction. And I just finally note that two appellate court decisions, as well as the trial court in this case, which I believe deserves some deference, acknowledge that this was a single allegation, a single act charged. Samantha's appellate court case, we acknowledge that, quote, the two counts of aggravated battery were based on the same and single physical act of battering Rosalinda. The published decision in the co-minor respondent's case, Jessica M., the state charged respondent with the same conduct under different theories of culpability. There's another quote, recited much of the same language, additionally alleged the beating occurred on a public way, the two counts of the same language. And finally, the trial court said it itself, as to count two, there is no question that the beating took place on a public way, thus satisfying the prong of count two, the sole prong. Mr. Tapper, if this were a jury trial of an adult and these two charges were presented to the jury in the same way and the jury returned verdicts of guilty on both and convictions were entered by the court on both, the remedy would be to merge those or to set aside one conviction, but you would not set aside the findings. Of course, right. And we don't ask to set aside the findings here. We just ask that they be... But isn't that somewhat what the state is arguing, that you basically have one adjudication based on two findings? The concern in one act on grime doctrine is future prejudice. Even if we don't dispute that there's a single finding of delinquency, I think the case law supports that. I'm not entirely sure. It seems to me it's a single finding of worship and delinquency. In the jury situation, couldn't you go back to the record and find that a person had been found guilty of both of these counts, the same as you could go back into this record and find that the trial judge had found that the state had proven the elements of the offense? Your Honor, we don't want... In the same situation. I think we don't want a trial in a trial. Practically speaking, when they're looking at the future prejudice and future sentencing hearings and future impeachment of witnesses, they're wanting to look at one document. They're going to look at the minimus in the adult criminal context. And that's what we should have here. So they could go back and say it possibly could support... I don't think practically that's happening. So I'm out of time. So for these reasons, I would just ask that you remand and ask to vacate one of the aggravated battery adjudications and correct the record and firmly state that the one echoing crime doctrine applies to juvenile proceedings. Thank you. Good afternoon, Chief Justice, Honorable Justices, Counsel. May it please the Court, my name is Whitney Bond and I'm an Assistant State's Attorney of the Cook County State's Attorney's Office representing the people of the state of Illinois. On June 10th of 2005, the victim in this case, Rosalinda R., was brutally attacked by a group of seven girls and an attack that began behind her home and eventually in her attempt to escape this attack ended up in the front of her home in the street. Among this group of girls was the minor respondent herself who was identified by both the victim as well as the victim's sister as having known from the neighborhood. During this attack, Rosalinda suffered nine stitches to the head as well as bruises and abrasions about her head and body while on this public way. At the close of the state's evidence, the trial court in this case found that the people had met their burden as to both aggravated battery, great bodily harm as well as aggravated battery on a public way. The court entered a single finding of delinquency and the dispositional order in this case reflects that finding. The minor respondent appealed and it's the people's position that the appellate court was correct in their decision that because the One Act, One Crime doctrine does not apply in juvenile court cases, that this minor respondent's argument did not survive the doctrine of waiver. As this court is well aware, in 1977 in People v. King the One Act, One Crime doctrine was born. Essentially for protecting defendants who could be convicted of multiple convictions arising out of the same physical act from the prejudice that would result, specifically as counsel noted in the form of negative parole outcomes. For this reason, fundamentally, the notion of the One Act, One Crime doctrine is a bit of a misnomer in the juvenile court context. When you look at One Act, One Crime, we tend to focus on the number of crimes being alleged, whether or not they are arising out of single physical acts, but really what we should be looking at is whether or not there is prejudice that is resulting. Is that how you distinguish artists at WC? In artists, this court very recently simply stated artists itself was really an invitation by the people in that case to abandon the One Act, One Crime doctrine as a whole in the state of Illinois. I believe this court, no disrespect, overgeneralized perhaps the One Act, One Crime doctrine as it refers to juvenile court. I understand why the court said what it said. One Act, One Crime doctrine is very important in all of these different circumstances, adult courts, including juvenile courts. But specifically, the case that artists refers to WC, in that case, nowhere in the record does it talk about changing the dispositional order based on a One Act, One Crime type violation. In WC, there were two convictions. Dispositional order is a single order. It is. Based upon what we have heard today, that is not what needs changing if change is needed. That would have to be what is changed. In this case, multiple findings of guilt. What we have to recognize is findings of guilt is very different than findings of delinquency. What happened in this case is exactly the same relief that the minor respondent received in WC. Essentially, in WC, there was one murder. In effect, two counts of murder on the petition for adjudication and wardship were merged. One finding of delinquency was entered. However, the dispositional order, which in the adult court context would be considered the minimus, reflected two counts of murder. This court, in its decision, did not state that it was because of the One Act, One Crime doctrine that it was correcting the dispositional order. Instead, it stated that it was a technical error and that it agreed with the state that all you needed to do was if future proceedings came about and future court in a subsequent proceeding needed to look at the minor respondent's record and that any sort of error would have been eliminated by a close reading of the record. But, for the sake of judicial economy, they went ahead and corrected the dispositional order to reflect the one finding of guilt for murder. I don't recall seeing artist or WC mentioned in your brief. I believe WC was mentioned. Artist was not mentioned. Due to an oversight, I would apologize. It did come down before I filed my response brief. But I would argue today, as I would have argued in my brief, that, as I just said, artist seems to be an overgeneralization of the One Act, One Crime doctrine as applied to juvenile court. And my reason is this. In juvenile court cases, the same protections that a defendant receives based on King Doctrine and the adult court apply here. I believe, as Justice Krummeier pointed out, that juvenile court would have the same set of facts in front of them, would choose to file an indictment or information charging both aggravated battery, great bodily harm, as well as aggravated battery on a public way. People would present their evidence at the close of the state's case. If they had met their burden, the trial court would enter its finding as to both counts and then would merge those counts and enter a single finding as to both counts. And that is the exact same thing that happened in this case, in the minor respondent's case, in the juvenile court setting. It's not the people's position that the One Act, One Crime should never apply to juvenile court cases. It's a position that it already does, because essentially what's happening in the adult court is what's happening here. Any sort of future harm, as this court noted in Ray W.C., looking back at this case, is going to note that this minor respondent was found delinquent and one sentence was entered as a result. Any sort of subsequent hearings, be it extended juvenile justice, for example, it doesn't state in the statute that all charges that have ever been brought against a minor respondent should be considered, or all findings of guilt should be considered. It's whether or not there was adjudications of worship, findings of delinquency entered. And in that regard, this minor respondent is more protected than an adult would be in a criminal court, because take, for example, a situation where King would not apply in the adult court context. Multiple crimes that aren't based on a single physical act. If that happened in a juvenile court context, there would still be but one finding of one petition that would be filed  in a juvenile court context. In addition, the harm in this case, although the people are stating that one act, one crime is already encompassed within the juvenile court act, if minor respondent's relief were allowed to stand, essentially what the fear is, is the multiple findings of guilt, not multiple findings of delinquency, because that's not what we have here.  there's a chance that the minor respondent is going to be in a juvenile court context. If the multiple findings of guilt are the fear, then essentially that would be taking away from the state the ability to choose which crimes to charge based on different theories or alternate theories in a case. This young woman, the defendant in this case, was near adult age, wasn't she? I believe she was 15 at the time. I believe at 17 she becomes an adult. If a person in her position was arrested after she was 17 years old and was charged with a felony drug case, and you looked at her record and you saw aggravated battery, great bodily harm and aggravated battery on a public way, wouldn't both of those be offered in aggravation on the felony charge? I don't believe that they can be. Essentially what you're looking for in a minor respondent's record is whether or not they were found delinquent and adjudicated a word of the court. I'm sorry, go ahead. I know you're saying that, that all that would be considered was the finding of delinquency. But if somebody had access to the other records, the trial record, wouldn't they see a finding of guilty of two separate aggravated batteries? Yes, because the people had met their burden as to both counts of aggravated battery. And in seeking the maximum sentence you could get, wouldn't you as a prosecutor like to introduce both of those aggravated batteries in aggravation? As much as I would like to as a prosecutor, I don't believe that they have the ability to do so. Maybe because you were involved in this case and you know there's a problem with it. I also was a practitioner in juvenile court as well. So I understand that when looking back, you do take the record as a whole. But you also look to, specifically in an EJJ hearing comes to mind, whether or not minor respondents have been adjudicated delinquent prior to. There was an easy way to do it and I'm concerned about that. What harm does it do to the state to limit you to one finding of aggravated battery in this case? The harm becomes even before that when it's, if essentially what we're afraid of here is multiple findings of guilt, then that ties the people's hands as far as just even charging instrument itself. In the initial filing of a petition for adjudication of wardship, the people would really have to judge which crime are we going to charge here because if the fear is multiple findings, then we don't have a lot of options as far as. You could charge as many crimes as you want. You could choose how you charge them. You could just follow Crespo and if you charged it, you could pick after the trial which one you wanted to be your lead charge. Or if you wanted multiple charges, you could formulate your complaint so that you could do that. I guess I really don't see where the state suffers any prejudice at all by doing what has been suggested today. The state would suffer in, we'll use this case for a good example, two, there's two counts of aggravated battery. The minor respondent was found guilty by the trial court as to both counts. If, for instance, we couldn't go forward on both counts in a future proceeding, say it needed to only be one and the people would choose aggravated battery, great bodily harm. Excuse me, but I, is anybody suggesting you couldn't based upon the complaint that's made here that you couldn't file multiple charges? No, I'm not saying that. I think the harm then becomes, I am saying that to one regard, but with regard to your last question, I believe the harm would be if she's found guilty of two crimes and essentially only one crime could stand. And an appeal is raised based on that crime and for whatever reason, say in the sense it would be aggravated battery, great bodily harm, for whatever reason that crime is reversed and remanded. And essentially a count that we had already proven her guilty of would no longer exist, be it the aggravated battery in a public way. You couldn't use that count for sentencing under any circumstance? But we're not trying to. I'm just saying, in the hypothetical I'm trying to give an example as to what the harm would be. So essentially if you have two findings of guilt where the people had met their burden, but really because of this fear of multiple findings, only one guilty finding could stand and somehow that was appealed and overturned, essentially she would not have to stand responsible for the other crime that she was already found guilty of. If, in this case, what we're talking about is the harm in multiple findings of guilt versus multiple findings of delinquency, which we don't have here. I'm not sure that that was what you're looking for. In essence, the people aren't arguing that the one act, one crime doctrine shouldn't apply to juvenile court. The fact is, we believe that it already does. Because when you're talking about prejudice to minor respondents, there is no prejudice here when one finding is entered of delinquency and one sentence is the result. And especially since, in light of this Court's statement in NAWC, that if there is any confusion, all you need to do is simply look at the record, the record as a whole, and that, in this case, you could look back and definitely say that, okay, there was two findings of guilt due to the aggravated battery, on a public way, yet there was only one finding that was entered, and the dispositional order reflects the one finding, which was essentially the technical error that was remedied by WC. In essence, the minor respondent alleges that she was prejudiced, but the prejudice is ameliorated by the fact that she already has a correct dispositional order. In addition, it is the people's position that even if the one act, one crime doctrine this Court finds should apply to other cases, this case is not one in which that doctrine would apply. The way the petition was laid out was such that it apportioned the aggravated battery, great bodily harm, due to the stitches to the head, as well as the second count, which is the aggravated battery in a public way, due to the bruises, abrasions about her head and body. In that regard, we do not... There was originally... Count one is stitches, great bodily harm, and count two is abrasions. It states, and I apologize for reading directly from my notes here, the petition was originally filed, and then secondly it was amended to add a second count of aggravated battery. One was for committing battery in a public way, and one for committing battery that create serious bodily harm. The aggravated battery count, great bodily harm, was knowingly caused bodily harm to Rosalinda R. in that she was struck about the head multiple times, causing a laceration that required stitches. And then the second count, the aggravated battery with regard to a public way, was she was struck multiple times, causing lacerations to the face or body while on the street at approximately 3003 South Feral. For these reasons today, and those that are encompassed in our brief, we ask that you affirm the minor respondent's finding of delinquency. Thank you. Thank you, Your Honor. A few points. Can we begin with what we just talked about? Sure. Okay, I can begin with that. That's my last point, but I will adjust. I want to make sure you have enough time. I would say that regarding the stitches and the lacerations, she did read the charges, the State did read the charges correctly. Stitches and lacerations are not acts. The act and the charges are the battery, the multiple times, the multiple strikes. That is the act alleged in both charges. The distinguishing feature is public way and count two, and that is proven by the fact that they say public way, and the fact that they cite separate statutory subsections in the first charge. Statutory sections in the first charge citing section A, and citing section BA in the second charge. Crespo teaches us the intent of the charges, and to a lesser extent, the arguments at trial. The State didn't refer to any arguments at trial where they apportioned the offenses, and they can't do it here. The act is the battery under both charges. As far as the larger question of whether the one act, one crime, we said this in our brief, charge away. Charge all you want. They can charge any legal theory they want. That's what's done in criminal court. That's what can be done in juvenile court. It's just they can charge multiple acts. Of course they can, because they might not be able to meet their burden for great bodily harm where they could for public way, or vice versa. They can do that, and they can find it. But if it ultimately ends up being the same act, they have to merge, and one has to be vacated or whatever we want to refer to it as. And as far as their position, my understanding of their position is that only the single finding of delinquency is relevant. I just find that position very difficult to understand or to take. I don't believe it. The state clearly, for example, at a subsequent sentencing hearing is going to use the fact that a delinquency finding was based on a murder. Or they're going to use the fact that a delinquency finding was based on multiple offenses. And if it was based on those things, if it was a brutal sexual assault, they're going to base that it's based on that. They want to know the underlying offense or offenses. And it is profoundly unfair if someone who is not a found delinquent for a petty offense, for a misdemeanor, for a lesser felony, should have to be in the same category as a murder. And I think it, you know, what is the state's interest in promulgating this confusion? Of course these courts want to know. A former murderer is more, someone who murdered someone is more dangerous than someone who committed a misdemeanor and should be treated differently and they are treated differently. And that's true. If we're going to take the state's argument to the extreme, where does that leave us? And I hesitate to say this because I don't want to give states the argument in the future, but I would be confident that this court would reject this. But does that mean a delinquency finding based on multiple offenses that an appellant would be unable to challenge reasonable doubt on one of those offenses or trial error on one of those offenses? So if a hypothetical minor is found delinquent based on murder and disorderly conduct and there's no decedent and we challenge reasonable doubt on the murder, is that moot? Because we're not challenging the disorderly conduct and only the single finding of delinquency is relevant? That's the state's position. I don't think I'm exaggerating that and that can't be proper and that can't be constitutional. Of course the underlying offense and offenses are relevant and that's why the 1 Act 1 Crime Doctrine needs to apply equally. And with that, thank you, Your Honor. Thank you, Counsel. Case number 106361, In Re, Samantha V, will be taken under advisement.